# IN THE COURT OF APPEALS OF IOWA

No. 18-1055
Filed August 15, 2018

**IN THE INTEREST OF A.F.,**
**Minor Child,**

**A.J.F., Mother,**
        Appellant,

**D.F., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Boone County, James B. Malloy, District Associate Judge.

The mother and father appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Ashley M. Sparks of Cooper, Goedicke, Reimer & Reese, PC, West Des Moines, for appellant mother.

Nicolas G. Fontanini of Jordan & Mahoney Law Firm, PC, Boone, for appellant father.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Nicole Berman of Hastings, Gartin & Boettger, LLP, Ames, guardian ad litem for minor child.

Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

The mother and father separately appeal the termination of their parental rights to their child, A.F., who was born in October 2011. The juvenile court terminated each parent's rights pursuant to Iowa Code section 232.116(1)(f) (2017), and neither parent challenges the sufficiency of the evidence to meet the statutory grounds. Each challenges the determination that termination is in A.F.'s best interests and claims the court should have found that a permissive factor precludes termination and should have saved the parent-child relationships by placing A.F. in a guardianship with her paternal grandmother rather than terminating the parental rights.

**I. Background Facts and Proceedings.**

In September 2016, local police executed a search warrant on the family's home and discovered more than one-quarter of a pound of methamphetamine, a large sum of cash, drug paraphernalia, other evidence of intent to sell, and a stolen firearm. As a result of the search, each parent was charged with a number of crimes. In a later interview with the Iowa Department of Human Services, the mother admitted she relapsed on methamphetamine in March 2016 and indicated she used the drug two to three times per week since; she claimed she did not use the drug in the home. The father indicated he relapsed on methamphetamine in November or December 2015 and admitted he used the drug three to four times each day; he admitted using the drug in the garage of the home.

The parents consented to the temporary removal of A.F. from their care in October 2016. A.F. was placed in the care of her paternal grandmother, where she remained at the time of the termination hearing in January 2018.

The mother originally accepted a plea deal, which resulted in her receiving probation for the September 2016 drug-related charges. However, at the time of the termination hearing, the mother had just been sentenced to serve a ten-year prison term following a guilty plea to an August 2017 charge of theft in the first degree.[1] In addition, the mother's probation officer filed a notice of the mother's probation violation following the new charges in August, and a probation-revocation action was still pending. The mother faced an additional ten-year sentence if her probation was revoked.

The father ultimately pled guilty to two counts of possession with intent to deliver (methamphetamine).[2] He was still awaiting sentencing at the time of the termination hearing. The father testified he knew he would be serving prison time but hoped to receive the minimum sentence, which would allow him to be released in June 2020. However, it was possible the father would receive a 105-year sentence—if he received the maximum.

The mother attended some substance-abuse and mental-health therapy between October 2016 and her incarceration in August 2017, but she also

---

[1] The mother was initially charged with robbery in the first degree and theft in the second degree, which were amended to theft in the first degree as part of her guilty plea.

[2] He pled guilty to one count of possession with intent to deliver (methamphetamine), second offense, and the rest of the September 2016 charges were dismissed. The father incurred a number of new drug charges in August 2017. He entered a guilty plea to one count of possession with intent to deliver (methamphetamine), second or subsequent offense, as part of the August 2017 charges, and the rest were dismissed.

continued to use methamphetamine regularly. The father took fewer steps to address his drug abuse, and he also continued to use methamphetamine until he was arrested in August 2017. Both parents admitted use through December 16, 2016; later admitted they removed drug patches in March 2017 because they knew they would test positive; and tested positive for methamphetamine on patches they wore between April 25 and May 3 and between June 1 and 5.

At the termination hearing, the father testified he continued to see A.F. weekly while incarcerated and spoke to her at least every other day on the phone. He asked that the court establish a guardianship with A.F.'s paternal grandmother instead of terminating his parental rights. The mother also continued to see and speak with A.F., though less frequently than the father. She similarly requested that the court establish a guardianship.

The paternal grandmother testified she was willing to adopt A.F. if the parents' rights were terminated or be the guardian of A.F. if the court favored that option. She preferred to be appointed as guardian and testified she intended to facilitate visits and communication between both parents and A.F. regardless of the court's decision on termination or guardianship.

The court terminated each parent's rights pursuant to section 232.116(1)(f). In refusing the request to establish a guardianship, the court stated:

> [A.F.] is only six years old. Both her parents are going to prison. They have shown that they are not able to provide [A.F.] a secure, stable, and safe home. [A.F.] is in therapy at this point and at first needed to have grandmother present during sessions. She has now progressed and meets privately with the therapist, but takes frequent bathroom breaks to make sure that grandma is still waiting for her. She is in need of the type of stability that her parents cannot offer.

> Adoption will help to provide a more stable childhood for [A.F.] than a guardianship.

The parents separately appeal.

## II. Standard of Review.

We review termination proceedings de novo. *In re A.S.,* 906 N.W.2d 467, 472 (Iowa 2018).

## III. Discussion.

As neither parent challenges the juvenile court's determination that the statutory grounds for termination have been met pursuant to section 232.116(1)(f), we need not consider this step. *See In re P.L.,* 778 N.W.2d 33, 40 (Iowa 2010).

In determining whether termination of the parent's right is in A.F.'s best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Each parent claims termination is not in the child's best interests because the paternal grandmother was willing to enter into a guardianship, but that argument presupposes an ongoing parent-child relationship with her parents is good for A.F. Both parents have a long criminal history, with the mother having a controlled-substance conviction dating back to 2000 and the father having a conviction for possession of paraphernalia from 2001. In the years between those early convictions and the termination hearing, the parents continued to struggle with criminality and controlled substances. And the parents' September 2016 arrests for a number of serious, felony offenses did not prevent either parent from taking actions which resulted in both of them being arrested again in August 2017 for

additional felony charges. As a result of their actions, each parent faces a number of years in prison. While they intend to maintain contact with A.F. during that time, their incarceration prevents them from being able to provide daily nurturing for A.F. They are also unable to contribute to her economic support or offer her a stable home in which she can feel secure. The paternal grandmother's willingness to enter into a guardianship does not make the arrangement the best choice for A.F., who has struggled for want of stability. A.F.'s safety and her need for a permanent home are the primary concerns. *See In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially). And "[i]mportantly, 'a guardianship is not a legally preferable alternative to termination.'" *A.S.*, 906 N.W.2d at 477 (citation omitted). In these circumstances, termination is in A.F.'s best interests.

Next, each parent maintains the juvenile court should have saved the parent-child relationship based upon two permissive factors in subsection (3). Iowa Code section 232.116(3)(a) allows the court to forestall termination when a relative has legal custody of the child and paragraph (c) allows termination to be avoided when "termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." The court's application of the factors is permissive, not mandatory. *Id.* at 475. The burden is on the parent to establish that an exception should be applied. *Id.* at 476. As we have stated above, the grandmother's willingness to become the guardian of A.F. does not prevent the determination that termination of the parents' rights is appropriate. *See id.* at 475 ("An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child.

The child's best interests always remain the first consideration." (citation omitted)).

Moreover, if, as the parents claim, they will have the same contact with A.F. even if their rights are terminated, then it is unclear what detriment A.F. could suffer as a result of termination. *See* Iowa Code § 232.116(3)(c). A.F. is young, and both parents may spend the rest of her childhood in prison; we cannot say the juvenile court should have applied a permissive factor to save the parent-child relationships here.

**AFFIRMED ON BOTH APPEALS.**